Good morning, Your Honor. May it please the Court, Ken Wentz appearing on behalf of the appellant Niffler Construction, Inc. Niffler Construction is a local small business that builds homes in Omaha. Niffler Construction was pro se until this appeal, and Niffler Construction has a clean record that's free of worksite death or injuries. The reason we're here today is because OSHA compliance officers acted ultra-vires. They referred one of Niffler Construction's worksites for inspection without following the Secretary of Labor's established procedures to determine whether an inspection is even warranted at that worksite. By then continuing with that inspection, the Secretary of Labor, through the OSHA compliance officers, these OSHA compliance officers acted outside of the authority that Congress vests in them to inspect because there was no review prior to the initiation of that inspection. Under the act as passed by Congress, there are five different scenarios in which OSHA may inspect. Those are imminent danger, employee complaint, catastrophic and fatal accidents, follow-up inspections, and programed high-hazard inspections. Now, here, the Secretary of Labor then interprets those to also include a sixth type of inspection, which is what is at issue here, which is called a referral inspection. The Secretary of Labor publishes its interpretation to mean that there's then six different types of referral inspections. One of these types of referral inspections is by an OSHA compliance officer referring a worksite for However, the Secretary of Labor says you can't just, as an OSHA compliance officer, make that referral. There is a decision tree that the Secretary of Labor publishes that says you must first undergo some sort of review to determine whether the criteria for an inspection are warranted. There's two different decision trees depending on whether the referral is by telephone or in writing. And here, the OSHA compliance officers followed neither. Mr. Wentz? Yes. Are you going to get around to whether we have subject matter jurisdiction in this case? Yes, Your Honor. Well, go ahead with your argument. I just wanted to be sure that you... Sure. I can address that right now, Your Honor, because I understand that might be a threshold matter for this court. It is for me, anyway. Yes. As far as subject matter jurisdiction goes, this court does have subject matter jurisdiction. This case took kind of a long and windy road to get to where we are today, and that isn't typical of a case that would be an appeal from an OSHA decision. It looks like you're at least two days late in your filing. Not according to Judge Smithcamp and not according to the Secretary of Labor when they filed their motion to dismiss or transfer the case to this court, when they undertook that before Judge Smithcamp. When Mr. Niffler filed the appeal, he filed it in the United States District Court for the District of Nebraska, and at the point in time during that case, the Secretary of Labor moved to either dismiss that claim, that appeal, or to move the appeal in the alternative to this court. The Secretary of Labor, in his brief, stated that the final order was dated May 7th of 2012, which would mean that Mr. Niffler's appeal was timely. Judge Smithcamp, in giving the Secretary what it wanted and moving the case to this court, found that and adopted the Secretary's argument that May 7th of 2012 was the date on the final order and that then Mr. Niffler's appeal was timely. And so we would posture that then this court would be bound to that finding by Judge Smithcamp. Additionally, the Secretary again raised that issue here a year ago, and this court, through a panel decision, denied the Secretary's motion to dismiss on that same basis of an untimely filing of an appeal. And in denying that motion to dismiss, we would submit that it becomes, number one, law of the case, and number two, that this court is then bound by Judge Smithcamp's finding of fact that it was indeed a timely filing. Well, in addition to the time problem, you're raising some things with us that you didn't raise to the Administrative Law Judge, aren't you? No, Your Honor, we are not. Mr. Niffler was proceeding pro se before the Administrative Law Judge, and he was proceeding pro se when he filed his then petition for a review of the decision of the Administrative Law Judge. Does that excuse pro se or with counsel? It's the same, isn't it, in terms of the issues that you have to raise? Well, there's two issues there, Your Honor. The first is that the Eighth Circuit has precedent in the In Ring Cook decision that says that the pleadings of pro se plaintiffs should be taken more liberally than if they were represented by an attorney. And Mr. Niffler did preserve those constitutional issues. In the transcript for this case, when he was arguing before the Administrative Law Judge, he, on at least five or six different occasions before the Administrative Law Judge, raised constitutional issues. Fourth Amendment? He raised, I don't believe it's a Fourth Amendment constitutional issue. I believe that they were broad constitutional issues. So we disregard your arguments about the Fourth Amendment, is that right? No, that's not correct, Your Honor, because even though he might not have specifically said a Fourth Amendment constitutional issue, he did raise constitutional issues regarding the seizure of his worksite, which was done by the OSHA compliance officers. And that preserved it as far as how OSHA compliance officers even happened upon his worksite in the first place, which is a procedural argument as well. And so then the Administrative Law Judge there, instead of dealing with the constitutional issues, in the Administrative Law Judge's decision, the Administrative Law Judge says, I don't have the authority to rule on Mr. Niffler's constitutional issues that he has raised and punted on the issue. In the petition for review by the OSHA Review Commission, Mr. Niffler raised these constitutional issues again. And the petition was denied. And then when he filed this appeal in the district court, he raised constitutional issues again. And the constitutional issues, while he might not have said Fourth Amendment, Eighth Amendment, whatever the amendment was, he did say, he did take issue. He did think it was cruel and unusual punishment. No, he did not. I see. That's not what we're arguing here, Your Honor. Well, maybe Mr. Niffler would have a different opinion, but that's not what we're arguing here. So we would submit that these issues were raised at the lower level, especially under the liberal pleading standard that this court does adopt when reviewing a pro se plaintiff appearing before, in this case, an Administrative Law Judge. At each step of the process, before the Administrative Law Judge, when he petitioned for a review of that ALJ decision before the OSHA Review Commission, and when he filed his appeal before the United States District Court for the District of Nebraska, he raised constitutional issues at each step in the proceeding. So at no time did he punt on those constitutional issues and create a situation like the Secretary believes we have here, which is that those issues have been waived. So, counsel, in summary, what is or what facts support your basic constitutional deprivation argument that a Fourth Amendment violation has occurred? The facts of this case, really, you have to take the inspection and move backward from the inspection. Well, was it the officers or the agents looking from the street? Or was it subsequent, when people actually entered the work site? It would be prior to even when the agents viewed it from the street, Your Honor. Because what we're saying is that what happened here is that there were two OSHA compliance officers that were out on the frolic. The testimony from the OSHA compliance officers is that they say that they were going from one referral to another. However, when you map out the actual referrals that were done that day, there's no possible way that they could have been driving unless they were taking a scenic tour of Omaha. They happened upon the Street of Dreams, which has a number of residential homes being constructed at the same time. These two OSHA compliance officers began an inspection of one home, which was not the Nippert Construction Home. And at the time then, they see some folks on the roof of Mr. Niffler's, the home that Niffler Construction was building. And then they call in to, or they don't call it in. That's the problem. What they do is they go ahead and call another OSHA compliance officer, who they said was also out doing referrals, to then come and inspect. They're not following their own procedure. And then these OSHA compliance officers, I mean, the Secretary might argue that this is an imminent danger exception. Because these folks were on the roof without any kind of fall protection whatsoever. And we would submit that if this was an imminent danger, then the OSHA compliance officers wouldn't have taken 30 to 35 minutes before they addressed the situation. The testimony in the record is that the first set of OSHA compliance officers viewed the situation for 3 to 5 minutes. Then they called their other OSHA compliance officers, who took 25 to 30 minutes to get there. And those OSHA compliance officers then sat on the curb for another 2 minutes. This is all in the transcript. So if it was an imminent danger situation, I wouldn't think that if you're 2 houses away, that you would allow 30 to 35 minutes to go by before you addressed the situation. And you make an allegation that there's been a seizure. Yes. When did the seizure take place and what affected it? The seizure took place when the OSHA compliance officer arrived on the scene, parked on the curb. But then when he stepped foot on Niffler Construction's work site, that is when the seizure occurred. Because he didn't address Mr. Niffler. What authority establishes that a government agent stepping on property in and of itself affects a seizure? Well, when he spoke to Mr. Niffler, Mr. Niffler comes out to greet the agent. The agent then hands him paperwork and says, I'm here to inspect, fill out this paperwork, and then begins the inspection. Once he begins that inspection, that's when the seizure occurred. Because at that time, according to the OSHA compliance officer's own testimony, that he's paralyzed the work site. He has taken control of that entire work site. But as I read the record, he asked your client if he could talk with him, and he said yes. That's consensual stuff, not four amendments. I believe that the record states that Mr. Niffler was cordial. I don't think that there's anything that says exactly what Mr. Niffler did or did not say. There's nothing in the record that says that if there is any kind of consent, it was knowingly involuntary. Mr. Niffler did as the OSHA compliance officer instructed him to do. At no time was he asked to do anything. The OSHA compliance officer testified that- What did he tell him to do? He told him to bring the individuals down from the roof so he could talk to them. And Mr. Niffler did that. He told him to fill out paperwork. Mr. Niffler did that. And during that entire hour, hour and a half process, Niffler Construction didn't have any power to do anything to advance the project that they were working on. In effect, the whole construction site was seized. And the OSHA officer's own testimony is that the reason they go out with two people here, two people to inspect a five-employee job site, seems a little overreaching to me. But the reason that they have two OSHA compliance officers from the OSHA's compliance officer's own testimony is so they get off-site quicker, which means that the company can resume business activities. So here the expectation is that once they began the inspection, the company would cease business activities until the OSHA compliance officer moved off-site. So we would submit that that would constitute a Fourth Amendment seizure of Mr. Niffler's work. Has any federal appellate court held that? No, Your Honor. No federal appellate court has held that seizure by OSHA compliance officers of a work site occurred. Or district courts? No, not that from our research we could find. The closest thing that we could find is the line of cases that stems from the Marlow v. Barlow's case, which talks about how an administrative, that they cannot just proceed with a search of the work site. But it does not discuss seizure at all. I see that I'm ending my rebuttal time. I'd like to reserve the rest of my time. Mr. Wentz, or Ms. Kapp. Kapp's web, I'm sorry. Good morning, Your Honors. My name is Anne Webb, representing the Secretary of Labor. Preliminarily, I would like to address the question of jurisdiction. The court here should dismiss this matter for lack of subject matter jurisdiction because the appeal was not timely filed. The Section 11 of the OSHA Act gives 60 days for an appellant to file an appeal to this court following the issuance of a final order from the Occupational Safety and Health Review Commission. This 60-day timeline has been found to be jurisdictional and mandatory by multiple circuits, including the Third Circuit and Wright Commission, the Tenth Circuit and Donovan v. Howard Electric Company, and the D.C. Circuit and Oil, Chemical, and Atomic Workers International Union. The court cannot waive this deadline. Federal Rule of Appellate Procedure 26b-2 provides that the court may not extend a deadline to appeal from an administrative proceeding without specific authorization, which is absent here. It is very clear that this appeal was filed late. What's the effect of the Secretary being responsible for a mistake in stating the actual date of the issuance of the administrative order? Your Honor, if there was a mistake below, that was an unknowing waiver. The motion filed by the Secretary's counsel to the district court was an uncontested motion merely to address the fact that the appeal had been filed in the wrong court. That court was considering only that question, that it itself lacked jurisdiction and whether it could transfer the matter. Furthermore, I would point out, Your Honor, that this mistake was clear error, and this court retains the power to correct a clear error and, in fact, must ensure that it has jurisdiction, regardless of any error below. So you're saying it was unreasonable for the appellant to rely on the date the district court chose to describe, which itself relied on the Secretary's representation? Your Honor, the appellant didn't rely on that date. The appellant had already filed the appeal at that time. The Secretary's error took place afterward. Furthermore, the date on which the final order of the commission became final is statutorily mandated. The OSH Act in Section 12J provides that a final order of an ALJ's decision becomes final 30 days after the ALJ's decision is docketed if the commission chooses not to review the decision. The commission did not review this decision. Did you argue before the district court that it was untimely, that Niffler's appeal to the district court was untimely? No, Your Honor. There was a mistake below in understanding that statutory schema. What was that mistake? What was the gravamen of that mistake that you're talking about? The mistake was that the commission sends a letter to someone who has filed a petition for discretionary review. That letter is called a notice of final order. That notice of final order is a courtesy that the commission sends out to someone who has filed a petition for discretionary review but who is not going to be reviewed. That notice was dated sort of at the bottom, May 7th, 2012. However, it is clear in the body of that notice that the commission's final order date was May 4th, 2012. At some point along the line, the date that that issuance occurred got pulled into the facts here. But it is irrelevant. Would that letter say something like, we're not going to review the ALJ's order, so if you're going to do something, you have to do something within 30 days? Yes, Your Honor. I didn't go back and look at that. Let me just pull that up. I'm sorry, I don't know if I have it up here right now. But I believe that the notice of final order does state that it does reference the 60-day period or at least references the portion of the law where that information can be found. Well, it says that any person adversely affected must file a petition for review with the appropriate federal court of appeals within 60 days of the date of the above final order date. Yes, Your Honor. And that above final order date was May 4th, 2012. Which means that the appeal was due no later than July 3rd, 2012. Is this precisely the same, this jurisdictional argument on the late filing? Is this precisely the argument that was made in the motion to dismiss before this court that was denied by the administrative panel? Yes, Your Honor. The same argument was made to the administrative panel.  Your Honor, the cases cited indicating that a jurisdictional decision by an administrative panel are law of the case consistently in the circuit, including in McEwen and in Judge Colleton's concurrence in Ritchie Special Credit Investments, consistently state that jurisdictional matter may be the law of the case. However, the court never loses its power to reconsider a clear error in that decision. And in this case, I would posit that that clear error is clear. And at no point has the court ever found that it cannot reconsider such a decision. In fact, it must consider its jurisdiction and it must ensure that it has jurisdiction and correct any clear error in the decision of the administrative panel. Your Honor, in addition, this court lacks jurisdiction over the issues raised here because those issues were not urged before the commission. This requirement is statutory. Section 11A of the OSHA Act requires that no objection that has not been urged before the commission shall be considered by the court unless failure or neglect to urge such objection shall be excused because of extraordinary circumstances. But isn't the pro se claim that his constitutional rights have been violated? Isn't that broad enough to cover specific parts of the Constitution that have now been raised, due process and Fourth Amendment, things like that? No, Your Honor. Being pro se is not an extraordinary circumstance. And it's not a free pass to ignore this clear statutory requirement. The cases cited for the idea that the court should liberally construe the petition for discretionary review are striking here. Particularly, this court's In re Cook considered an individual incarcerated person's complaint to a district court for mistreatment of some sort. And in considering that complaint, the court dismissed all of the frivolous pro se claims in that complaint. The court carefully considered each complaint, and it did provide a little bit of leeway on a confusing legal matter about whether this particular filing qualified as a mandamus or something along those lines. But then it carefully reviewed each claim and dismissed those that were frivolous. And the court should do the same here. Even if even if liberally construed, the petition for discretionary review did not meet the standard required to urge an issue before the commission, which is which is quite a high standard. The First Circuit described it as it must convey the substance face up and squarely, which certainly did not happen here. The the appellant never asserted any of the facts that are the basis for its current claims. It did not mention quote driving around and looking for violations, although the reply brief here suggests that that that language is in the petition for discretionary review. It certainly is not. The citations to the transcript were to two issues related to the coverage of the OSHA Act, which covers private sector employers and not government, not the government or public sector employers. That was the primary constitutional issue raised. And in fact, the I would like to touch on that briefly. The commission can and does hear constitutional issues. The commission regularly hears constitutional issues. The ALJ here was responding to the to Mr. Niffler's argument that the entire OSHA act on its face was unconstitutional because it covers private sector employers and not the public sector and not the public sector. The ALJ correctly noted that it can that the commission does not have jurisdiction to decide the constitutionality facially of its authorizing statute. However, in numerous cases that that body hears as applied constitutional arguments very similar to the ones that have been raised here today. It heard Fourth Amendment arguments in a case that went to the First Circuit, Brock v. Brooks-Wolins Company and BARDAV Incorporated. It heard Fifth Amendment arguments in CH2M Hill Incorporated and Trinity Industries. Therefore, it is clear that if these issues had been described to the ALJ and to the commission, they could have been considered. And to return very briefly to the issues that were raised in the petition for discretionary review, the constitutional issues were not factually supported, even if he didn't state the correct amendment. The commission could not have even impliedly understood what the real issue was that is being raised here today. Because the issue of driving around, the issue of receiving notice, the issue of not being allowed to be on a public street, none of these things were mentioned or even referenced in citations to the transcript. Very briefly, Your Honors, just to address the – appellant has not raised cognizable Fourth, Fifth Amendment or statutory claims. However, to very briefly address them, OSHA acted reasonably within its enforcement authority. OSHA's enforcement authority is very broad. And appellant misconstrues the regulations by suggesting that there is somehow a limited list of reasons why an inspection can take place. 29 CFR 1903.3 parrots the statute and states quite broadly that the secretary may enter, through the authority granted to compliance officers, may enter work sites and conduct inspections in a reasonable manner of time and place. That authority is very broad. The additional special procedures for certain types of inspections are not a limited list. Those are merely additional procedures provided for unusual circumstances. That does not restrict the secretary from choosing to conduct inspections based on other sources of information or other circumstances that arise. And those circumstances certainly include a trained expert compliance officer observing an immediate hazard and responding to that hazard right away. That is clearly within the bounds of the very broad enforcement authority granted to the secretary. Furthermore, Your Honor, the idea that somehow the appellant was seized by these compliance officers is completely unsupported. The case law on seizure requires that there be some coercion, that there be complete overcoming of the person's freedom to move. However, in this case, that simply is not present. What would have happened if Mr. Niffler just told him to leave? Section 1903.4 of the OSHA regulations clearly state, and this is OSHA's policy, if a compliance officer is told they may not enter a worksite or is even restricted from entering certain parts of a worksite, the inspection ends and the compliance officer asks a few questions to understand why they're being refused entry and then returns to their office and seeks an administrative warrant, if appropriate. That is the policy. That is OSHA's policy, and that did not happen here. There was no moment in which the compliance officers understood that they did not have the full consent of Mr. Niffler to enter the worksite and conduct a reasonable inspection. I will note that this issue was not raised before the ALJ, so the ALJ did not make a finding on consent because Mr. Niffler did not raise consent as an issue before the ALJ, so there are paltry facts. Going back to your seizure, the word seizure in the Fourth Amendment is not limited to seizing a person. It's seizing property as well, right? His argument is that he was in essence seizing part of the plaintiff's property here and using it to carry out his nefarious mission, being observed from the street and so forth. That's the argument that I understand or hear. Yes, Your Honor. I would note that, first of all, there was consent here. So clearly there were none of the trappings of property being taken away, held on to. No consent to talk, but not necessarily to walk around and interview his employees and things like that, right? He did consent to speak to his employees. He specifically actually—several employees left the worksite for lunch apparently during the inspection and returned and voluntarily were interviewed. Mr. Niffler himself agreed to have a recorded interview. And I would note, Your Honor, that seizure of property requires demonstrating that there was some meaningful interference. I see that my time is up. I want to just answer your question very briefly. There is nothing here— You think the appearance of an OSHA inspector on a worksite isn't meaningful interference with the operations there? Your Honor, there's really nothing to suggest that the workers who were not involved with the limited scope of this inspection couldn't have gone on with other work during that time. Thank you, Your Honor. Thank you, Ms. Webb. Mr. Wentz. Your Honor, the Secretary suggests that the OSHA compliance officer is authorized when seeing a hazard to respond to that hazard right away. However, there's nothing here in the record that shows that they actually responded to that hazard right away. The OSHA compliance officer that originally saw the hazard that existed waited 30 to 35 minutes before allowing another OSHA compliance officer to respond to that hazard. At no time did that OSHA compliance officer intervene. Regarding the jurisdictional issues, the Secretary really relies on this McEwen case. And the McEwen case is a case from this Court that actually finds in favor of Niffler Construction's argument and holds that law of the case actually applies. And in that case, in the McEwen case, this Court declined to reconsider an argument that was raised prior based upon law of the case. And so the Secretary says that McEwen applies and we're fine with McEwen applying to this circumstance. Regarding this In Re Cook issue, saying that, well, frivolous claims were disposed of. There's no frivolous claims here, Your Honor. I mean, the In Re Cook issue does not apply here other than for the very broad holding that pro se plaintiffs, the pleadings of pro se plaintiffs are to be construed liberally. And then the Secretary also argues that, well, the OSHA Review Commission does have the authority to review constitutional issues. Well, constitutional issues are raised in Mr. Niffler's petition for review of the OSHA Review Commission. So I see my time is up. Thank you very much, Your Honor. Thank you, Mr. Lance. The Court wishes to thank both counsel for your presence and argument this morning for the briefing which you submitted. We'll take your case under advisement and render a decision in due course.